Mr. Justice Swayne
delivered the opinion of the court:
This is an appeal by the United States from the judgment of the Court of Claims.
On the 18th of April, 1865, the United States contracted with the bark Annie Kimball to convey a cargo of anthracite steamer coal from Philadelphia to Port Boyal, in South Carolina. The United States agreed to pay freightage “ at the rate of $6.25 per ton, and demurrage $100 per day, allowing twenty-one days for discharging.” In the margin of the bill of lading was the following memorandum: “ Freight and demurrage payable only on the certificate of the quartermaster that the cargo has been received in good order.”
The vessel arrived at Port Boyal on the 4th of May, 1865. The master immediately tendered the delivery of the cargo to the quartermaster, who was the consignee. He refused to receive it, and ordered the master to proceed with the vessel and cargo to Key West. This the master refused to do, and notified the quartermaster that the owners would hold the United States responsible for damages if the order was enforced. The master protested against being, compelled to sail immediately, upon the ground that the state of the tide would render his departure then unsafe. Permission to delay was refused. The vessel was towed by a Government tug. She struck violently on a bar off Port Royal, was severely injured, and sprung a leak. She was towed back and beached to prevent her from foundering. She was detained at Port Boyal, by the delay of the authorities of the United States in discharging her cargo, until the 24th of June. The quartermaster certified that the cargo was received in good order, and that the detention of the vessel was owing to no fault of the master or crew. The *238 vessel was unavoidably further detained at Port Royal until the 11th of July. She then left, a G-overnment tug towing her, for Boston, where she arrived on the 18th of that month. Her crew were thereupon discharged.
The twenty-one days specified in the contract for the delivery of the cargo expired on the 24th of May. The Court of Claims found that the damages which the appellees had sustained by the loss of the vessel’s service, and her expenses, was $100 per day, making an aggregate of $5,300, and that they had expended at Boston, in repairing the injuries to the vessel, the sum of $7,604.41.
Before the commencement of this suit the United States paid the amount due, according to the terms of the contract, for freight, but refused to pay anything more.
The Court of Claims held that the appellees were entitled to recover the sums above mentioned, making an aggregate of $12,904.41, and gave judgment accordingly.
So far as the thirty days’ demurrage, extending from the 24th of May to the 25th of June, is concerned, the judgment is. clearly correct. The certificate of the quartermaster brings the case within the terms of the contract. The appellees were as-much entitled to this compensation as to the amount stipulated to be paid for freight. The right to both rests upon the same foundation, and the appellants might as well have refused to pay the latter as the former. This item amounted to the sum of $3,000.
The allowance of the residue of the damages, and of the-amount expended for repairs, involves other considerations, and requires a separate examination.
The order to the master to proceed to Key West was certainly not authorized by; the contract. That imposed no such obligation. No rate of freight for this voyage had been agreed upon, and no such stipulation had been entered.into. The contract expired upon the delivery of the cargo at Port Royal. It is silent as to anything further. It may be safely assumed that nothing beyond this was in the contemplation of either party when the vessel left Philadelphia. The Court of Claims held that the conduct of the quartermaster was not an appropriation, but the impressment of the vessel. The duress, the major: vis, the resistance of the master and his compulsory obedience,, are clearly developed in the findings in the record.
*239 We think the view of the court below upon this subject was-the proper one 5 but did that entitle the appellee to recover for the damages and repairs here under consideration?
The first section of the Act July 4th, 1864, declares that the-jurisdiction of the Court of Claims shall not extend to “ any claim against the United States growing out of the destruction or appropriation of, or damage to, any property, by the Army or Navy, or .any part of the Army or Navy, engaged in the suppression of the rebellion, from the commencement to the close thereof.” The second and third sections i>rovide for the adjustment and payment, through the Quartermaster-General, the Commissary-General, and the Third Auditor of the Treasury, of' all claims of loyal citizens in States not in rebellion, for quartermaster stores and subsistence furnished to the Army. (13 Stat.. L., 381.)
The Act February 21st, 1867, (14 Stat. L., 397,) declares that the act of 1864 shall not be construed to authorize the settlement of any claim for supplies taken or furnished for the use of the armies of the United States, nor for the occupation of, or injury to, real estate, nor for the appropriation or destruction of, or damage to, personal property, by the military authorities or troops of the United States, “where such claim originated during the war for the suppression of the southern rebellion in a State or part of a State declared in insurreetionP
The Eesolution of the 23d of December, 1869, (16 Stat. L., 368,) provides that the act of 1867 shall not be so construed as “to debar the settlement of claims for steamboats or other vessels, taken without the consent of the owner pr impressed into the military service of the United States during the late Avar, in States or parts of States declared in insurrection, provided the claimants Avere loyal at the time their claims originated, and remained loyal thereafter, and Avere residents of loyal States, and such steamboats or other vessels were in the insnrrectionary'districts by proper authority.”
The act of 1864 took away the jurisdiction of the Court of Claims as to all the cases there specified. The act of 1867 forbade the payment of the claims which it described, while the resolution permitted the settlement of those within the category which it laid down and the qualifications prescribed in the proviso. The Eesolution refers expressly to the act of 1867, and that act to the act of 1864. They are in pari materia, constitute *240 a common contest, and must be construed together. This case, in the aspect of it we are considering, is clearly within the body of the resolution. Whether it is also within the requirements of the proviso is not disclosed by the findings in the record. They are silent upon that subject. If the appellees can bring themselves within both they will be entitled to be paid, but not, we think, by the instrumentality of the Court of Claims.
The purpose of the resolution, obviously, was not to enlarge or restore the jurisdiction of that court, but to remove the bar which the act of 1867 had been held to create. That bar affected not the court, but the officer of the Army and of the Treasury, whose duty it would otherwise have been to adjust and liquidate such demands. When the restriction was removed, the jurisdiction and authority of those officers, and not of the court, were revived. The phrase “ settlement,” used in the resolution, has reference to executive and not to judicial action. The context of the two acts and the resolution point clearly to this construction of the- latter. The remedy of the appellees, if they are entitled to any, must be sought at the hands of the executive or legislative department of the Government. The judicial department is incompetent to give it.
In our opinion the Court of Claims erred in taking jurisdiction of either of the claims outside of the contract. The United, States v. Bussell, heretofore decided at this term, is clearly distinguished by its controlling facts from the present case. It is not intended to impugn anything said by the court in that case.
The judgment of the Court of Claims is reversed, and the cause will be remanded with directions to enter a j udgment in conformity to this opinion.